1
2
3
4
5
6
7        **UNITED STATES DISTRICT COURT**
8        **CENTRAL DISTRICT OF CALIFORNIA**
9
10   MICHELLE BENDON, ROGER          )    Case No. ED CV 16-0861 FMO (AGRx)
     BERTRAND, CYNTHIA ELDER, BRYCE  )
11   EVANS, DAVID PAQUETTE and EDWIN )
     HERRERA, individuals on behalf of )   **ORDER RE: JOINT MOTION**
12   themselves and on behalf of all other )  **PRELIMINARY APPROVAL OF CLASS**
     persons similarly situated,      )    **SETTLEMENT**
13                                     )
                  v.                   )
14                                     )
     DTG OPERATIONS, INC.,             )
15                                     )
                  Defendant.           )
16   _____ )

17        Having reviewed and considered all the briefing filed with respect to the parties' renewed

18   Motion for Preliminary Approval of Class Settlement (Dkt. 37, "Motion") and the oral argument

19   presented at the hearing on August 24, 2017, the court concludes as follows.

20                                **INTRODUCTION**

21        On February 17, 2016, Michelle Bendon ("Bendon"), Roger Bertrand ("Bertrand"), Cynthia

22   Elder ("Elder"), Bryce Evans ("Evans"), David Paquette ("Paquette") and Edwin Herrera ("Herrera")

23   (collectively, "plaintiffs") filed a class action complaint against DTG Operations, Inc. ("DTG

24   Operations" or "defendant") in Riverside County Superior Court, asserting causes of action for: (1)

25   unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 et seq.; (2) failure to provide

26   accurate itemized statements in violation of Cal. Lab. Code § 226; and (3) failure to timely pay

27   wages in violation of Cal. Lab. Code § 203.  (See Dkt. 1-1, Exhibit A ("Complaint") to Notice of

28   Removal ("NOR") at ¶¶ 46-72.  Plaintiff then filed a First Amended Complaint ("FAC"), adding a

claim under the California Private Attorneys General Act ("PAGA"), Cal. Labor Code §§ 2698 et seq. (See Dkt. 1-2, Exhibit B, FAC at ¶¶ 73-77). Defendant timely removed to federal court. (See Dkt. 1, NOR).

After nearly a year of litigation and settlement negotiations, including an all-day mediation before an experienced mediator of wage and hour class actions, Jeffrey A. Ross, the parties reached a settlement in January, 2017. (See Dkt. 33-1, Plaintiffs' Memorandum of Points and Authorities in Support of [Initial] Motion for Preliminary Approval of Class Settlement at 3). Plaintiffs filed their initial Motion for Approval of Class Settlement on March 17, 2017. (See Dkt. 33). The court held a preliminary approval hearing on April 20, 2017, noting several concerns with the proposed settlement and denying the plaintiffs' initial Motion without prejudice. (See Dkt. 35, Court's Order of April 20, 2017). Following the hearing, the parties filed a Joint Stipulation to Amend the Class Action Settlement Agreement, (see Dkt. 37-2, Exhibit 2 to Declaration of Norman Blumenthal ("Blumenthal Decl.") ("Joint Stipulation to Amend")), to amend certain terms in the original settlement agreement. (See Dkt. 37-2, Exhibit 1 to Blumenthal Decl. ("Settlement Agreement")). The parties also filed a stipulation to file a Second Amended Complaint ("SAC"), which the court granted. (See Dkt. 37-1, Memorandum of Points and Authorities in Support of [Renewed] Motion for Preliminary Approval of Class Settlement ("Pls.' Mem.") at 2; Dkt. 36, Joint Stipulation; Dkt. 38, Court's Order of June 5, 2017; see also Dkt. 42, SAC).

Plaintiffs filed the instant Motion, seeking an order: (1) certifying the proposed class for settlement purposes; (2) preliminarily approving the Settlement Agreement; (3) appointing Simpluris as the Settlement Administrator; (4) approving the notice documents and directing dissemination of the class notice; and (5) scheduling a final approval hearing. (See Dkt. 37-1, Pls.' Mem. at 1; Dkt. 37-3, Parties' Proposed Order at 1, 5-6).

## BACKGROUND

This case arises from allegations that DTG Operations, a company which owns and operates rental car stores, failed to provide plaintiffs, who were each employed by DTG Operations as Rental Sales Associates ("RSAs") or Customer Service Representatives ("CSRs") in California, with all of their required off-duty meal and rest breaks. (See Dkt. 42, SAC at ¶¶ 2-9,

13).  Plaintiffs allege that their rigorous work schedules prevented them from being able to take off-duty meal breaks and that they were not "fully relieved of duty for meal periods."  (See id. at ¶ 13).  According to plaintiffs, they were required to work in excess of four hours without being provided the required ten-minute rest period or paid an one hour's wages in lieu of their rest period.  (See id. at ¶ 14).  Plaintiffs additionally allege that their wage statements were inaccurate because they failed to correctly record their missed meal and rest breaks, (see id. at ¶ 15), and DTG Operations' purposeful avoidance of the payment for all time worked allowed it to "profit and gain an unfair advantage over competitors who complied with the law."  (See id. at ¶ 16).  DTG Operations filed an Answer to plaintiffs' FAC which denied plaintiffs' allegations and asserted 21 affirmative defenses.  (See Dkt. 1-3, Exhibit C to NOR ("Answer") at ¶¶ 1-21).

The parties have defined the settlement class as "all individuals who were employed in California by DTG Operations, Inc. as non-exempt CSRs and/or RSAs (including Lead CSRs and RSAs) at any time between February 17, 2012 and March 1, 2017[.]"  (Dkt. 37-2, Settlement Agreement at § I.C.).  DTG Operations will pay a "Gross Settlement Amount" of $700,000, which is "all-inclusive of all payments contemplated" in the settlement, (see id. at § I.Q.), including payments to all class members, attorney's fees and costs, class representative service awards, expenses for the administration of the settlement, and the PAGA payment to the California Labor & Workforce Development Agency ("the LWDA").  (See id. at § III.B.).  The entire Gross Settlement Amount will be disbursed pursuant to the settlement.  (See id. at § III.A.).

The "Net Settlement Amount" is the amount remaining after payments to class counsel, the class representatives, the settlement administrator, and the LWDA.  (See Dkt. 37-2, Settlement Agreement  at § I.T.).  Under the Settlement Agreement, class members' Settlement Shares are determined according to the following formula:

> The Settlement Share for each Participating Class Member will be calculated by (a) dividing the Net Settlement Amount by the total number of weeks worked by Participating Class Members in the Class Period and (b) multiplying the result by each individual Participating Class Member's weeks worked as a CSR or RSA during the Class Period. If a Participating Class

Member worked any time during a payroll period, then he or she will be credited for the week or weeks worked during that payroll period. If a Participating Class Member is a part-time employee, which are those employees who regularly work less than 30 hours in a week, the weeks worked for that individual shall be multiplied by 0.5 for purposes of the above calculation of their Settlement Share.

(Dkt. 37-2, Joint Stipulation to Amend at ¶ 3 (amending § III.C.2. of the Settlement Agreement)).

Pursuant to the Settlement Agreement, class counsel will file an unopposed motion for attorney's fees of no more than 25 percent of the Gross Settlement Amount and costs and expenses incurred of no more than $15,000. (See Dkt. 37-2, Settlement Agreement at § III.B.2.). In addition, the motion will seek up to $10,000 in an incentive award for each named plaintiff. (See id. at § III.B.1.).

## LEGAL STANDARD

"[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

I.   CLASS CERTIFICATION.

At the preliminary approval stage, the court "may make either a preliminary determination that the proposed class action satisfies the criteria set out in Rule 23 or render a final decision as to the appropriateness of class certification."[1] Smith v. Wm. Wrigley Jr. Co., 2010 WL 2401149, *3 (S.D. Fla. 2010) (internal citation omitted); see also Sandoval v. Roadlink USA Pac., Inc., 2011 WL 5443777, *2 (C.D. Cal. 2011) (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620, 117 S.Ct. 2231, 2248 (1997)) ("Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23[.]"). "A court considering such a request should give the Rule 23 certification factors 'undiluted, even heightened, attention in the settlement

---

[1]   All "Rule" references are to the Federal Rules of Civil Procedure.

4

context.'" <u>Sandoval</u>, 2011 WL 5443777, at *2 (quoting <u>Amchem</u>, 521 U.S. at 620, 117 S.Ct. at 2248). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." <u>Amchem</u>, 521 U.S. at 620, 117 S.Ct. at 2248.

A party seeking class certification must first demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 345, 131 S.Ct. 2541, 2548 (2011). Rule 23(b) is satisfied if:

(1) prosecuting separate actions by or against individual class members would create a risk of:

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

1        (A) the class members' interests in individually controlling the

2        prosecution or defense of separate actions;

3        (B) the extent and nature of any litigation concerning the controversy

4        already begun by or against class members;

5        (C) the desirability or undesirability of concentrating the litigation of the

6        claims in the particular forum; and

7        (D) the likely difficulties in managing a class action.

8 Fed. R. Civ. P. 23(b)(1)-(3).

9      The party seeking class certification bears the burden of demonstrating that the proposed 10 class meets the requirements of Rule 23. See Dukes, 564 U.S. at 350, 131 S.Ct. at 2551 ("A party 11 seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, 12 he must be prepared to prove that there are in fact sufficiently numerous parties, common 13 questions of law or fact, etc."). However, courts need not consider the Rule 23(b)(3) 14 considerations regarding manageability, as settlement obviates the need for a manageable trial. 15 See Morey v. Louis Vuitton N. Am., Inc., 2014 WL 109194, *12 (S.D. Cal. 2014) ("[B]ecause this 16 certification of the Class is in connection with the Settlement rather than litigation, the Court need 17 not address any issues of manageability that may be presented by certification of the class 18 proposed in the Settlement Agreement."); Rosenburg v. I.B.M., 2007 WL 128232, *3 (N.D. Cal. 19 2007) (discussing "the elimination of the need, on account of the Settlement, for the Court to 20 consider any potential trial manageability issues that might otherwise bear on the propriety of class 21 certification").

22 II.    FAIRNESS OF CLASS ACTION SETTLEMENT.

23      Rule 23 provides that "the claims, issues, or defenses of a certified class may be settled 24 . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule 23(e)] 25 is the protection of th[e] class members, including the named plaintiffs, whose rights may not have 26 been given due regard by the negotiating parties." Officers for Justice v. Civil Service Comm'n 27 of the City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982), cert. denied 459 U.S. 28 1217 (1983). Accordingly, a district court must determine whether a proposed class action

6

1  settlement is "fundamentally fair, adequate, and reasonable." <u>Staton</u>, 327 F.3d at 959; <u>see</u> Fed.

2  R. Civ. Proc. 23(e).  Whether to approve a class action settlement is "committed to the sound

3  discretion of the trial judge." <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1276 (9th Cir.), <u>cert.</u>

4  <u>denied</u>, <u>Hoffer v. City of Seattle</u>, 506 U.S. 953 (1992) (internal quotation marks and citation

5  omitted).

6       "If the [settlement] proposal would bind class members, the court may approve it only after

7  a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

8  "[S]ettlement approval that takes place prior to formal class certification requires a higher standard

9  of fairness [given t]he dangers of collusion between class counsel and the defendant, as well as

10  the need for additional protections when the settlement is not negotiated by a court designated

11  class representative[.]" <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir. 1998).  As the

12  Ninth Circuit has observed, "[p]rior to formal class certification, there is an even greater potential

13  for a breach of fiduciary duty owed the class during settlement.  Accordingly, such agreements

14  must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of

15  interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair."

16  <u>In re Bluetooth Headset Prods. Liab. Litig.</u>, 654 F.3d 935, 946 (9th Cir. 2011).

17       Approval of a class action settlement requires a two-step process – a preliminary approval

18  followed by a later final approval.  <u>See</u> <u>Tijero v. Aaron Bros., Inc.</u>, 2013 WL 60464, *6 (N.D. Cal.

19  2013) ("The decision of whether to approve a proposed class action settlement entails a two-step

20  process."); <u>West v. Circle K Stores, Inc.</u>, 2006 WL 1652598, *2 (E.D. Cal. 2006) ("[A]pproval of a

21  class action settlement takes place in two stages.").  At the preliminary approval stage, the court

22  "evaluate[s] the terms of the settlement to determine whether they are within a range of possible

23  judicial approval." <u>Wright v. Linkus Enters., Inc.</u>, 259 F.R.D. 468, 472 (E.D. Cal. 2009).  Although

24  "[c]loser scrutiny is reserved for the final approval hearing[,]" <u>Harris v. Vector Mktg. Corp.</u>, 2011

25  WL 1627973, *7 (N.D. Cal. 2011), "the showing at the preliminary approval stage – given the

26  amount of time, money and resources involved in, for example, sending out new class notices –

27  should be good enough for final approval." <u>Spann v. J.C. Penney Corp.</u>, 314 F.R.D. 312, 319

28  (C.D. Cal. 2016).  "At this stage, the court may grant preliminary approval of a settlement and

direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." Id. (internal quotation marks omitted); Harris, 2011 WL 1627973, at *7 (same); Cordy v. USS-Posco Indus., 2013 WL 4028627, *3 (N.D. Cal. 2013) ("Preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.") (internal quotation marks omitted).

## DISCUSSION

I.   CLASS CERTIFICATION.

   A.   Rule 23(a) Requirements.

      1.   **Numerosity**.

   The first prerequisite of class certification requires that the class be "so numerous that joinder of all members is impractical[.]" Fed. R. Civ. P. 23(a)(1).  Although impracticability does not hinge only on the number of members in the putative class, joinder is usually impracticable if a class is "large in numbers." See Jordan v. Cnty. of Los Angeles, 669 F.2d 1311, 1319 (9th Cir.), vacated on other grounds, 459 U.S. 810 (1982) (class sizes of 39, 64, and 71 are sufficient to satisfy the numerosity requirement).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members, but not satisfied when membership dips below 21." Slaven v. BP Am., Inc., 190 F.R.D. 649, 654 (C.D. Cal. 2000); see Tait v. BSH Home Appliances Corp., 289 F.R.D. 466, 473 (C.D. Cal. 2012) ("A proposed class of at least forty members presumptively satisfies the numerosity requirement.").

   Here, the class is so numerous that joinder is impracticable.  The settlement class includes 620 members, (see Dkt. 37-2, Settlement Agreement at § III.C.5.; Dkt. 37-2, Blumenthal Decl. at ¶ 34), which easily exceeds the minimum threshold for numerosity.

      2.   **Commonality**.

   The commonality requirement is satisfied if "there are common questions of law or fact

common to the class[.]" Fed. R. Civ. P. 23(a)(2).  Commonality requires plaintiffs to demonstrate that their claims "depend upon a common contention . . . [whose] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 564 U.S. at 350, 131 S.Ct. at 2551; see Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (The commonality requirement demands that "class members' situations share a common issue of law or fact, and are sufficiently parallel to insure a vigorous and full presentation of all claims for relief.") (internal quotation marks omitted).  "The plaintiff[s] must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." Mazza v. Am. Honda Motor Co., 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks omitted).  "This does not, however, mean that every question of law or fact must be common to the class; all that Rule 23(a)(2) requires is a single significant question of law or fact." Abdullah v. U.S. Sec. Assocs., Inc., 731 F.3d 952, 957 (9th Cir. 2013), cert. denied, 135 S.Ct. 53 (2014) (emphasis and internal quotation marks omitted); see Mazza, 666 F.3d at 589 (characterizing commonality as a "limited burden[,]" stating that it "only requires a single significant question of law or fact").  Proof of commonality under Rule 23(a) is "less rigorous" than the related preponderance standard under Rule 23(b)(3).  See Mazza, 666 F.3d at 589.  "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.

This case involves common class-wide issues that are apt to drive the resolution of plaintiffs' claims.  The common questions include, among others: whether the class members were provided with timely meal periods, whether defendant's wage statements were compliant with California law, and whether class members were entitled to compensation for off-the-clock work which derived from missed meal periods.  (See Dkt. 37-2, Blumenthal Decl. at ¶ 34); see, e.g., Clesceri v. Beach City Investigations & Protective Services, Inc., 2011 WL 320998, *5 (C.D. Cal. 2011) (finding commonality requirement met for preliminary approval because "the settlement class members did not receive proper rest breaks; [] the settlement class members did not receive proper meal breaks; [] the settlement class members did not receive adequate wage statements

1  in compliance").

2          3.   **Typicality**.

3          "Typicality refers to the nature of the claim or defense of the class representative, and not

4  to the specific facts from which it arose or the relief sought."  Ellis v. Costco Wholesale Corp., 657

5  F.3d 970, 984 (9th Cir. 2011) (internal quotation marks and citation omitted).  To demonstrate

6  typicality, plaintiffs' claims must be "reasonably co-extensive with those of absent class

7  members[,]" although "they need not be substantially identical."  Hanlon, 150 F.3d at 1020; see

8  Ellis, 657 F.3d at 984 ("Plaintiffs must show that the named parties' claims are typical of the

9  class.").  "The test of typicality is whether other members have the same or similar injury, whether

10 the action is based on conduct which is not unique to the named plaintiffs, and whether other class

11 members have been injured by the same course of conduct."  Ellis, 657 F.3d at 984 (internal

12 quotation marks and citation omitted).

13         Here, the claims of the named plaintiffs are typical of the claims of the class.  They all were

14 employed in hourly, non-exempt positions by defendant during the relevant time period, and

15 therefore their claims arise from the same factual basis and are based on the same legal theories,

16 i.e., defendant violated plaintiffs' rights under California law by failing to pay them appropriately

17 and provide legally required meal and rest breaks.  (See Dkt. 37-2, Blumenthal Decl. at ¶ 34).

18 Finally, the court is not aware of any facts that would subject the class representatives "to unique

19 defenses which threaten to become the focus of the litigation."  Hanon v. Dataproducts Corp., 976

20 F.2d 497, 508 (9th Cir. 1992).

21         4.   **Adequacy of Representation**.

22         "The named Plaintiffs must fairly and adequately protect the interests of the class."  Ellis,

23 657 F.3d at 985 (citing Fed. R. Civ. P. 23(a)(4)).  "To determine whether [the] named plaintiffs will

24 adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and

25 their counsel have any conflicts of interest with other class members and (2) will the named

26 plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  Id. (internal

27 quotation marks omitted).  "Adequate representation depends on, among other factors, an

28 absence of antagonism between representatives and absentees, and a sharing of interest

1  between representatives and absentees."  Id.

2      The proposed class representatives do not appear to have any conflicts of interest with the
3  absent class members, especially given that they have no individual claims separate from the
4  class claims.  As plaintiff Bendon states, there "are no material conflicts" between her claims "and
5  the claims of the other class members[.]"  (See Dkt. 37-2, Exhibit 5 to Blumenthal Decl.,
6  Declaration of Michelle Bendon ("Bendon Decl.") at ¶ 3).  Bendon "made the decision" to act "as
7  a Class Representative for those who had been employed by Defendant and [] understood that
8  [she] was not only seeking pay for [herself], but also for all other non-exempt employees working
9  in California for Defendant."  (See id. at ¶ 5).  The other proposed class representatives made
10  similar representations.  (See Dkt. 37-2, Exhibit 6 to Blumenthal Decl., Declaration of Roger
11  Bertrand ("Bertrand Decl.") at ¶ 11 ("I agree that I will not put my own interests ahead of [those]
12  of the class."); Dkt. 37-2, Exhibit 7 to Blumenthal Decl., Declaration of Cynthia Elder ("Elder Decl.")
13  at ¶ 3; Dkt. 37-2, Exhibit 8 to Blumenthal Decl., Declaration of Bryce Evans ("Evans Decl.") at ¶
14  4 ("I fully understand that it is my responsibility to act in the Class's best interest, and not my
15  own."); Dkt. 37-2, Exhibit 9 to Blumenthal Decl., Declaration of David Paquette ("Paquette Decl."))
16  at ¶ 3 ("I was aware that I was acting as a Class Representative for those who had been employed
17  by Defendant [and] not only seeking pay for myself, but also for all other class members."); Dkt.
18  37-2, Exhibit 10 to Blumenthal Decl., Declaration of Edwin Herrera at ¶ 4 ("I knew that I was acting
19  as a Class Representative for my co-workers who had been employed by Defendant.").  In short,
20  "[t]he adequacy-of-representation requirement is met here because Plaintiffs have the same
21  interests as the absent Class Members[.] Further, there is no apparent conflict of interest between
22  the named Plaintiffs' claims and those of the other Class Members' – particularly because the
23  named Plaintiffs have no separate and individual claims apart from the Class." Barbosa v. Cargill
24  Meat Solutions Corp, 297 F.R.D. 431, 442 (E.D. Cal. 2013).

25      Finally, the court is satisfied that plaintiffs' counsel are competent and willing to prosecute
26  this action vigorously.  Plaintiffs' counsel request, and the Settlement Agreement provides, that
27  the court appoint as class counsel Norman B. Blumenthal, Kyle R. Nordrehaug, and Aparajit
28  Bhowmik of Blumenthal, Nordrehaug & Bhowmik LLP.  (See Dkt. 37-2, Settlement Agreement at

§ I.D. (defining Blumenthal, Nordrehaug & Bhowmik LLP as class counsel).  Blumenthal states that he and his firm are "experienced in prosecuting class action lawsuits" and have "been involved as class counsel in over two hundred [] class action matters, including many wage and hour class actions."  (See Dkt. 37-2, Blumenthal Decl. at ¶ 35; see also id. at Exhibit 4 (Resume for Blumenthal, Nordrehaug & Bhowmik LLP)).  Based on Blumenthal's representations, and having observed their diligence in litigating this case, the court finds that plaintiffs' counsel are competent, and that the adequacy of representation requirement is satisfied.  See Barbosa, 297 F.R.D. at 443 ("There is no challenge to the competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases."); Avilez v. Pinkerton Gov't Servs., Inc., 286 F.R.D. 450, 457 (C.D. Cal. 2012) vacated and remanded on other grounds, 595 F. Appx. 579 (9th Cir. 2015) ("Defendants do not dispute and the evidence confirms that, as detailed in their declarations, Plaintiffs' counsel are experienced class action litigators who have litigated many . . . class actions and have been certified as class counsel in numerous other class actions[.]").

B.      Rule 23(b) Requirements.

Certification under Rule 23(b)(3) is proper "whenever the actual interests of the parties can be served best by settling their differences in a single action."  Hanlon, 150 F.3d at 1022 (internal quotation marks omitted).  The rule requires two different inquiries, specifically a determination as to whether (1) "questions of law or fact common to class members predominate over any questions affecting only individual members[;]" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); see Spann, 314 F.R.D. at 321-22.

1.      **Predominance**.

"The Rule 23(b)(3) predominance inquiry tests whether [the] proposed classes are sufficiently cohesive to warrant adjudication by representation."  Amchem, 521 U.S. at 623, 117 S.Ct. at 2249.  "Rule 23(b)(3) focuses on the relationship between the common and individual issues.  When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for

handling the dispute on a representative rather than on an individual basis." Hanlon, 150 F.3d at 1022 (internal quotation marks and citations omitted); see In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 959 (9th Cir. 2009) ("[T]he main concern in the predominance inquiry . . . [is] the balance between individual and common issues."). Additionally, the class damages must be sufficiently traceable to plaintiffs' liability case. See Comcast Corp. v. Behrend, 569 U.S. 27, 35, 133 S.Ct. 1426, 1433 (2013).

Here, the court is persuaded that "[a] common nucleus of facts and potential legal remedies dominates this litigation." Hanlon, 150 F.3d at 1022. As discussed above, see supra at § I.A.2., there are common questions regarding defendant's "uniform and systematic employment policies" which "could establish Defendant's liability on a class-wide basis." (See Dkt. 37-1, Pls.' Mem. at 22). These common questions include, among others: whether the class members were provided with timely meal periods, whether defendant's wage statements were compliant with California law, and whether class members were entitled to compensation for off-the-clock work which derived from missed meal periods. See supra at § I.A.2.; (see also Dkt. 37-2, Blumenthal Decl. at ¶ 34). The answer to these questions would drive the resolution of the litigation, "despite the existence of minor factual differences between the potential class members, as the common issues predominate over varying factual predicates, such as number of hours worked under the allegedly unlawful workplace policies." Clesceri, 2011 WL 320998, at *5 (internal quotation marks omitted). In short, there are several common questions that predominate over all others in this litigation.

### 2. **Superiority**.

"The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case" and "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." Hanlon, 150 F.3d at 1023. Rule 23(b)(3) provides a list of four non-exhaustive factors relevant to superiority. See Fed. R. Civ. P. 23(b)(3)(A)-(D).

The first factor considers "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). "This factor weighs

against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation." Barbosa, 297 F.R.D. at 444. Here, plaintiffs do not assert claims for emotional distress, nor is there any indication that the amount of damages any individual class member could recover is significant or substantially greater than the potential recovery of any other class member.  (See, generally, Dkt. 42, SAC). The alternative method of resolution is individual claims for a relatively modest amount of damages, but such claims would likely never be brought, as "litigation costs would dwarf potential recovery." Hanlon, 150 F.3d at 1023; see Leyva v. Medline Indus., Inc., 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.  Thus, class certification is also the superior method of adjudication."); Bruno v. Quten Research Inst., LLC, 280 F.R.D. 524, 537 (C.D. Cal. 2011) ("Given the small size of each class member's claim, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action.").  In short, "there is no evidence that Class members have any interest in controlling prosecution of their claims separately nor would they likely have the resources to do so." Munoz v. PHH Corp., 2013 WL 2146925, *26 (E.D. Cal. 2013).

The second factor to consider is "the extent and nature of any litigation concerning the controversy already begun by or against class members[.]" Fed. R. Civ. P. 23(b)(3)(B).  While any class member who wishes to control his or her own litigation may opt out of the class, see Fed. R. Civ. P. 23(c)(2)(B)(v), "other pending litigation is evidence that individuals have an interest in controlling their own litigation[.]"  2 Newberg on Class Actions, § 4:70 at p. 277 (emphasis omitted).  Here, the parties have not directed the court to, and the court is otherwise unaware of, any related pending litigation.  (See, generally, Dkt. 42, SAC; Dkt. 37-1, Pls.' Mem.).

The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and the fourth factor is "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(C)-(D).  As noted above, "[i]n the context of settlement . . . the third and fourth factors are rendered moot and are irrelevant." Barbosa, 297 F.R.D. at 444;  see Amchem, 521 U.S. at 620, 117 S.Ct. at 2248 ("Confronted with a request for settlement-only class

1  certification, a district court need not inquire whether the case, if tried, would present intractable

2  management problems, for the proposal is that there be no trial.") (citation omitted).

3         The only factors in play here weigh in favor of class treatment.  Further, the filing of

4  separate suits by hundreds of other class members "would create an unnecessary burden on

5  judicial resources."  Barbosa, 297 F.R.D. at 445.  Under the circumstances, the court finds that

6  the superiority requirement is satisfied.

7  II.     FAIRNESS,    REASONABLENESS,    AND    ADEQUACY    OF    THE    PROPOSED

8       SETTLEMENT.

9       A.     The Settlement is the Product of Arm's-Length Negotiations.

10         "This circuit has long deferred to the private consensual decision of the parties."  Rodriguez

11  v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009).  The Ninth Circuit has "emphasized" that

12  "the court's intrusion upon what is otherwise a private consensual agreement negotiated between

13  the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that

14  the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating

15  parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all

16  concerned."  Id. (internal quotation marks omitted).  When the settlement is "the product of an

17  arms-length, non-collusive, negotiated resolution[,]" id., courts afford the parties the presumption

18  that the settlement is fair and reasonable.  See Spann, 314 F.R.D. at 324 ("A presumption of

19  correctness is said to attach to a class settlement reached in arm's-length negotiations between

20  experienced capable counsel after meaningful discovery.") (internal citation omitted); In re Netflix

21  Privacy Litig., 2013 WL 1120801, *4 (N.D. Cal. 2013) ("Courts have afforded a presumption of

22  fairness and reasonableness of a settlement agreement where that agreement was the product

23  of non-collusive arms' length negotiations conducted by capable and experienced counsel.").

24         Here, the parties propounded multiple sets of discovery and produced and reviewed

25  thousands of documents, including defendant's time records and payroll information.  (See Dkt.

26  37-2, Blumenthal Decl. at ¶¶ 12, 26).  Plaintiffs analyzed defendant's records with the assistance

27  of an expert.  (See id. at ¶ 26).  The parties also participated in an all-day mediation presided over

28  by Jeffrey A. Ross, an experienced mediator of wage and hour class actions, (see id. at ¶ 13), and

1  engaged in "arms-length" and "hard-fought and aggressive" negotiations.  (See id. at ¶ 27).
2  Moreover, plaintiffs' counsel has diligently investigated the case and concluded that the settlement
3  "for the consideration and on the terms set forth in the Agreement is fair, reasonable, and
4  adequate and is in the best interest of the Class in light of all known facts and circumstances,
5  including the risk of significant delay, defenses asserted by Defendant, and numerous potential
6  appellate issues."  (Id. at ¶ 28).

7       Based on the evidence and record before the court, the court is persuaded that the parties
8  thoroughly investigated and considered their own and the opposing parties' positions.  The parties
9  had a sound basis for measuring the terms of the settlement against the risks of continued
10 litigation, and there is no evidence that the settlement is "the product of fraud or overreaching by,
11 or collusion between, the negotiating parties[.]"  Rodriguez, 563 F.3d at 965 (quoting Officers for
12 Justice, 688 F.2d at 625).

13      B.   The Amount Offered In Settlement Falls Within a Range of Possible Judicial
14           Approval and is a Fair and Reasonable Outcome for Class Members.

15           1.   **Recovery for Class Members.**

16      As described above, the class members will share in a Gross Settlement Amount of
17 $700,000.  (See Dkt. 37-2, Settlement Agreement at § I.Q.).  This amount represents more than
18 the estimated damages based on the class members' uncompensated work and meal period time,
19 which is approximately $475,158, (see Dkt. 37-1, Pls.' Mem. at 14-15), and approximately 42
20 percent of the maximum value of the total possible statutory penalties for such violations.  (See
21 id. at 15).  Additionally, the settlement promotes enforcement of wage and hour laws in that it
22 provides for recovery for plaintiffs' PAGA claim in the amount of $7,000 ("PAGA Allocation").  (See
23 Dkt. 37-2, Settlement Agreement at § III.B.3.).

24      Under the circumstances, the court finds the settlement is fair, reasonable, and adequate,
25 particularly when viewed in light of the litigation risks in this case.  For example, as plaintiffs
26 recognize, there are "a number of defenses asserted by Defendant [which] present serious threats
27 to [plaintiffs'] claims[,]" including a potential de minimis argument for the off-the-clock activity
28 involved in this case, and "[m]ore importantly, there was also a very significant risk that, if the

16

Action [were] not settled, [plaintiffs] would be unable to obtain class certification[.]" (See Dkt. 37-1, Pls.' Mem. at 15).  Even assuming these challenges were overcome and class certification was granted and upheld on appeal, defeating summary judgment, winning the case at trial, and then sustaining the final judgment on appeal would be very difficult.  In short, the risks of continued litigation are significant, and the court takes these real risks into account.  Weighed against those risks, and coupled with the delays associated with continued litigation, the court is persuaded that the benefits to the class fall within the range of reasonableness.  See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (ruling that "the Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, [was] fair and adequate"); Rodriguez, 563 F.3d at 964 (affirming settlement approval where the settlement represented 30% of the damages estimated by the class expert); Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (internal quotation marks omitted).

    2.   **Release of Claims**.

Beyond the value of the settlement, potential recovery at trial, and the inherent risks in continued litigation, courts also consider whether a class action settlement contains an overly broad release of liability.  See Newberg on Class Actions § 13:15, at p. 326 (5th ed. 2014) ("Beyond the value of the settlement, courts have rejected preliminary approval when the proposed settlement contains obvious substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus Computer Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made basis," without the establishment of a settlement fund or any other benefit to the class).

Here, class members who do not exclude themselves from the settlement will release defendant from all claims which "were asserted in th[is] Action, or that arise from or could have been asserted based on any of the facts, circumstances, transactions, events, occurrences, acts,

17

disclosures, statements, omissions or failures to act alleged in Plaintiffs' Complaint[.]" (Dkt. 37-2, Joint Stipulation to Amend at ¶ 1 (amending § III.F.1. of the Settlement Agreement)).  Class members will retain the right to bring claims for "wrongful termination, retaliation, unemployment insurance, disability, workers' compensation, and claims" that arise outside the class period.  (Id.).  The release signed by class representatives, as partial consideration for service payments, includes an additional general release of all claims, including a waiver of rights under Cal. Civ. Code § 1542.  (See Dkt. 37-2, Settlement Agreement at § III.F.3.).  With the understanding  that class members are not giving up claims unrelated to those asserted in this lawsuit, and that the § 1542 waiver applies only to the class representatives, the court finds that the release adequately balances fairness to absent class members and recovery for plaintiffs with defendant's business interest in ending this litigation.   See, e.g., Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

        C.     The Settlement Agreement Does Not Improperly Grant Preferential Treatment to the Class Representatives.

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit."  Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).  The Ninth Circuit has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives."  Id.  The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest.  See id. at 1165.  "In deciding whether [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation."  Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).  In Radcliffe, for example, the court cast doubt, but did not rule on, "whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards."  715 F.3d at 1165.

The Settlement Agreement provides that Plaintiffs may apply to the court for "an award of not more than $10,000 as their Class Representative Service Payment" and that DTG Operations will not oppose a service payment of no more than $10,000.  (See Dkt. 37-2, Settlement Agreement at § III.B.1.).  If the court approves service payments of less than $10,000, any "remainder will be retained in the Net Settlement Amount for distribution" to the rest of the class members.  (See id.).  Here, the Class Representatives took risks in agreeing to serve as named plaintiffs and "spent considerable time" collecting and reviewing documentation related to the litigation and settlement.  (See, e.g., Dkt. 37-2, Exhibit 5, Bendon Decl. at ¶¶ 6-7; Dkt. 37-2, Exhibit 6, Bertrand Decl. at ¶¶ 5-7 (estimating he spent 40 to 50 hours working on the litigation); Dkt. 37-2, Exhibit 7, Elder Decl. at ¶¶ 4-5, 7 (estimating she spent 25 to 40 hours working on the litigation)). The Class Representatives spoke with plaintiffs' counsel at length "about the tasks and policies" used by defendant, (see Dkt. 37-2, Exhibit 5, Bendon Decl. at ¶ 8), and were frequently on "telephonic standby" to answer their attorneys' questions, including during the mediation.  (See Dkt. 37-2, Exhibit 8, Evans Decl. at ¶¶ 7-8 (estimating that he spent 35 to 45 hours working on the litigation)).  Additionally, the Class Representatives were required to sign a broader release than the one to which the class members are subject.  (See Dkt. 37-2, Settlement Agreement at III.F.3.).

Although the Class Representatives appear to have been diligent and taken on substantial responsibility in litigating the case, the court believes that $10,000 service payments would be excessive, and under the circumstances here, tentatively finds that incentive payments of no more than $5,000 are appropriate.  See Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014) (finding an incentive award of $5,000 presumptively reasonable).

     D.   Class Notice and Notification Procedures.

Upon settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Federal Rule of Civil Procedure 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information.  See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.), cert. denied, 543 U.S. 818 (2004) (internal quotation marks omitted). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d Cir.), cert. denied, 544 U.S. 1044 (2005). Settlement notices must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." Weinberger v. Kendrick, 698 F.2d 61, 70 (2d Cir. 1982), cert. denied, 464 U.S. 818 (1983) (internal quotation marks and brackets omitted); see Trotsky v. Los Angeles Fed. Sav. & Loan Ass'n., 48 Cal.App.3d 134, 151-52 (1975) (same); Wershba v. Apple Computer, Inc., 91 Cal.App.4th 224, 252 (2001) ("As a general rule, class notice must strike a balance between thoroughness and the need to avoid unduly complicating the content of the notice and confusing class members."). The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to the settlement. See Wershba, 91 Cal.App.4th at 251-52. "[N]otice is adequate if it may be understood by the average class member." 4 Newberg on Class Actions § 11:53, at p. 167 (4th ed. 2013).

Here, the parties request that Simpluris be appointed as Settlement Administrator. (See Dkt. 37-1, Pls.' Mem. at 8). Class members will receive notice by first class mail. (See Dkt. 37-2, Settlement Agreement at § III.E.2.b.; Dkt. 37-2, Exhibit 1 to Revised Settlement Agreement, Notice of Pendency of Class Action Settlement [] ("Notice"). The Notice describes the nature of the action, including the class claims. (See Notice at 1-2; Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii). The class definition is conspicuously included in the first page of the Notice, so that individuals can determine whether they are part of the class. (See Notice at 1). The Notice also explains the benefits of the settlement, including how each class member's Settlement Share will be calculated. (See id. at 2 & 3). The Notice explains that all class members who do not exclude themselves will release claims as set forth in the release provision. (See id. at 3-4). Finally, it explains that if class

members do nothing, they will automatically receive payment; if they exclude themselves, they will not receive any payment from the settlement; and if they would like to object, it explains the procedures for doing so.  (See id. at 4-5).  Additionally, if any class members want to appear at the Final Approval Hearing, the Notice instructs them to make a written request and provides the court's information and the time and date of the hearing.  (See id. at 5).  If class members would like more detailed information regarding the settlement, the Notice indicates that they may call or write to the Settlement Administrator.  (See id.).  Plaintiffs' counsel also provides its contact information and offers to distribute a copy of the settlement agreement or other settlement documents to interested class members.  (See id.).

Based on the foregoing, the court finds there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members.  Under the circumstances, the court finds that the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members and  complies with the requirements of due process.

E.     Summary.

The court's preliminary evaluation of the Settlement Agreement "does not disclose grounds to doubt its fairness[,] . . . such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval[.]"  In re Vitamins Antitrust Litig., 2001 WL 856292, *4 (D.D.C. 2001) (quoting Manual for Complex Litigation § 30.41 (3d ed. 1999)); see also Spann, 314 F.R.D. at 323 (same); In re NVIDIA Corp. Derivative Litig., 2008 WL 5382544, *2 (N.D. Cal. 2008) (same).

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1.  The Renewed Motion for Preliminary Approval of Class Action Settlement **(Document No. 37)** is **granted** upon the terms and conditions set forth in this Order.

2.   The court preliminarily certifies the class, as defined in § I.C. of the Settlement Agreement (Dkt. 37-2, Exhibit 1 ("all individuals who were employed in California by DTG Operations, Inc. as non-exempt CSRs and/or RSAs (including Lead CSRs and RSAs) at any time

between February 17, 2012 and March 1, 2017[.]") for the purposes of settlement.

3.  The court preliminarily appoints Michelle Bendon, Roger Bertrand, Cynthia Elder, Bryce Evans, David Paquette, and Edwin Herrera as class representatives for settlement purposes.

4.  The court preliminarily appoints Norman B. Blumenthal, Kyle R. Nordrehaug, and Aparajit Bhowmik of Blumenthal, Nordrehaug & Bhowmik LLP as Class Counsel for settlement purposes.

5.  The court preliminarily finds that the terms of the Settlement, as amended by the Joint Stipulation to Amend the Class Action Settlement Agreement (Dkt. 37-2, Exhibit 1 & Exhibit 2), are fair, reasonable, and adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

6.  The proposed manner of the notice of settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

7.  The court approves the form, substance, and requirements of the Class Notice (Dkt. 37-2, Exhibit 1 to Revised Settlement Agreement).

8.  The parties shall carry out the settlement and claims process according to the terms of the Settlement Agreement.

9.  Simpluris shall complete dissemination of class notice, in accordance with the Settlement Agreement, no later than **April 2, 2018**.

10.  Class members shall submit requests for exclusion from the settlement or objections to the settlement and/or plaintiffs' motion for an award of class representative incentive payments and attorney's fees and costs no later than **June 4, 2018**.  In accordance with the Settlement Agreement, requests for exclusion shall be sent to the Settlement Administrator, and objections shall be filed with the court.  If any objections are sent to Class Counsel or to the Settlement Administrator, Class Counsel shall file them with the court.

11.  Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs and incentive awards, shall, no later than **June 4, 2018**, file with

the court a Notice of Intent to Appear at Fairness Hearing.

12.  A final approval (fairness) hearing is hereby set for **August 16, 2018**, at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the Settlement as well as the award of attorney's fees and costs to class counsel, and incentive awards to the class representatives.

13.  Plaintiffs shall file a motion for an award of class representative incentive payments and attorney's fees and costs no later than **May 2, 2018**, and notice it for hearing for the date set forth in paragraph 12 above.  Any objection to the motion for an award of class representatives incentive payments and attorney's fees and costs, by class members, shall be filed by the deadline set forth in paragraph 10 above.  In the event any objections to the motion for an award of class representatives incentive payments and attorney's fees and costs are filed, class counsel shall, no later than **June 18, 2018**, file a reply addressing the objections.

14.  Plaintiffs shall, no later than  **June 18, 2018**, file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing for the date set forth in paragraph 12 above.  Defendants may file and serve a memorandum in support of final approval of the Settlement Agreement or in response to objections no later than **June 25, 2018**.

15.  All proceedings in the Action, other than proceedings necessary to carry out or enforce the Settlement Agreement or this Order, are stayed pending the final fairness hearing and the court's decision whether to grant final approval of the settlement.

Dated this 27th day of February, 2018.


_____
/s/
Fernando M. Olguin
United States District Judge

23