JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE BENDON, ROGER BERTRAND, CYNTHIA ELDER, BRYCE EVANS, DAVID PAQUETTE and EDWIN HERRERA, individuals on behalf of themselves and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DTG OPERATIONS, INC.,<br><br>Defendant. | Case No. ED CV 16-0861 FMO (AGRx)<br><br>**ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT**; **APPROVAL OF ATTORNEY'S FEES, COSTS & INCENTIVE AWARDS** |

Having reviewed and considered Plaintiffs' Motion for Final Approval of Class Settlement, (Dkt. 48, "Motion"), and Plaintiffs' Motion for Award of Attorneys Fees and Costs and Service Awards, (Dkt. 47, "Fees Motion"), and the oral argument presented during the final fairness hearing held on August 16, 2018, the court concludes as follows.

## INTRODUCTION

On February 17, 2016, Michelle Bendon ("Bendon"), Roger Bertrand ("Bertrand"), Cynthia Elder ("Elder"), Bryce Evans ("Evans"), David Paquette ("Paquette") and Edwin Herrera ("Herrera") (collectively, "plaintiffs" or "Class Representatives") filed a class action complaint against DTG Operations, Inc. ("DTG Operations" or "defendant") in Riverside County Superior Court, asserting causes of action for: (1) unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200 et seq.; (2) failure to provide accurate itemized statements in violation of Cal. Lab. Code § 226; and (3)

failure to timely pay wages in violation of Cal. Lab. Code § 203. (See Dkt. 1-1, Exhibit A ("Complaint") to Notice of Removal ("NOR") at ¶¶ 46-72). Plaintiffs then filed a First Amended Complaint ("FAC"), adding a claim under the California Private Attorneys General Act ("PAGA"), Cal. Labor Code §§ 2698 et seq. (See Dkt. 1-2, Exhibit B, FAC at ¶¶ 73-77). Defendant timely removed to federal court. (See Dkt. 1, NOR).

The parties reached a settlement in January, 2017. (See Dkt. 44, Court's Order of February 27, 2018, ("Preliminary Approval Order" or "PAO") at 2). On February 27, 2018, the court granted preliminary approval of the settlement, appointed Simpluris as settlement administrator, and directed Simpluris to provide notice to the class members. (Id. at 21-22).

Plaintiffs now seek: (1) final approval of the settlement; (2) attorney's fees and costs; and (3) service awards for plaintiffs. (See Dkt. 47, Fees Motion; Dkt. 48, Motion).

## **BACKGROUND**

I. PLAINTIFFS' CLAIMS.

This case arises from allegations that DTG Operations, a company which owns and operates rental car stores, failed to provide plaintiffs, who were employed by DTG Operations as either Rental Sales Associates ("RSAs") or Customer Service Representatives ("CSRs") in California, with all of their required off-duty meal and rest breaks. (See Dkt. 42, SAC at ¶¶ 2-9, 13). Plaintiffs allege that their rigorous work schedules prevented them from being able to take off-duty meal breaks and that they were not "fully relieved of duty for meal periods." (See id. at ¶ 13). According to plaintiffs, they were required to work in excess of four hours without being provided the required ten-minute rest period or paid an one hour's wages in lieu of their rest period. (See id. at ¶ 14). Plaintiffs also allege that their wage statements were inaccurate because they failed to correctly record their missed meal and rest breaks, (see id. at ¶ 15), and DTG Operations' purposeful avoidance of the payment for all time worked allowed it to "profit and gain an unfair advantage over competitors who complied with the law." (See id. at ¶ 16).

II. SETTLEMENT AGREEMENT.

The parties defined the settlement class as "all individuals who were employed in California by DTG Operations, Inc. as non-exempt CSRs and/or RSAs (including Lead CSRs and RSAs) at

any time between February 17, 2012 and March 1, 2017[.]" (Dkt. 37-2, Settlement Agreement at § I.C.; Dkt. 44, PAO at 3). DTG Operations will pay a "Gross Settlement Amount" of $700,000, which is "all-inclusive of all payments contemplated" in the settlement, (see Dkt. 37-2, Settlement Agreement at § I.Q.; Dkt. 44, PAO at 3), including payments to class members, attorney's fees and costs, class representative service awards, expenses for the administration of the settlement, and the PAGA payment to the California Labor & Workforce Development Agency ("the LWDA"). (See Dkt. 37-2, Settlement Agreement at § III.B.; Dkt. 44, PAO at 3). The entire Gross Settlement Amount will be disbursed pursuant to the settlement. (See Dkt. 37-2, Settlement Agreement at § III.A.; Dkt. 44, PAO at 2-4).

The "Net Settlement Amount" is the amount remaining after payments to class counsel, the class representatives, the settlement administrator, and the LWDA. (See Dkt. 37-2, Settlement Agreement at § I.T.; Dkt. 44, PAO at 3). Under the Settlement Agreement, class members' Settlement Shares are determined according to the following formula:

> The Settlement Share for each Participating Class Member will be calculated by (a) dividing the Net Settlement Amount by the total number of weeks worked by Participating Class Members in the Class Period and (b) multiplying the result by each individual Participating Class Member's weeks worked as a CSR or RSA during the Class Period. If a Participating Class Member worked any time during a payroll period, then he or she will be credited for the week or weeks worked during that payroll period. If a Participating Class Member is a part-time employee, which are those employees who regularly work less than 30 hours in a week, the weeks worked for that individual shall be multiplied by 0.5 for purposes of the above calculation of their Settlement Share.

(Dkt. 37-2, Joint Stipulation to Amend at ¶ 3 (amending § III.C.2. of the Settlement Agreement); Dkt. 44, PAO at 3-4).

Pursuant to the Settlement Agreement, class counsel filed an unopposed motion for attorney's fees seeking no more than 25 percent of the Gross Settlement Amount and costs and

expenses incurred of no more than $15,000. (See Dkt. 37-2, Settlement Agreement at § III.B.2.; Dkt. 47, Fees Motion; Dkt. 47-1, "Fees Memo." at 1). In addition, the motion seeks a $5,000 incentive award for each named plaintiff. (See Dkt. 37-2, Settlement Agreement at § III.B.1.; Dkt. 47-1, Fees Memo. at 18-20).

III. NOTICE TO THE CLASS.

Simpluris, the court-appointed settlement administrator, has implemented the notice program previously approved by the court. (See Dkt. 48-1, Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Settlement ("Memo.") at 5 & 7; Dkt. 48-3, Declaration of Mary Butler Regarding Notice and Settlement Administration ("Butler Decl.") at ¶¶ 3-15 & Exhibit ("Exh.") A; Dkt. 44, PAO at 19-22 (approving notice program)). On April 2, 2018, after checking and updating addresses via a National Change of Address ("NCOA") search, Simpluris sent Notice Packets to 653 class members via first class U.S. Mail. (See Dkt. 48-3, Butler Decl. at ¶¶ 7-8 & Exh. A (Mail Notice)). After 91 notice packets were returned as undeliverable, Simpluris performed an address search (i.e., skip trace), and 90 packets were re-mailed. (See id. at ¶ 10). Ultimately, only two notice packets were undeliverable. (Id.). Simpluris also established a case-specific toll-free telephone number with an interactive voice response system and live operators to accommodate potential class members with questions about the action and settlement. (See id. at ¶ 4).

According to Simpluris, 652 Class Members will be paid their portion of the Net Settlement Fund. (See Dkt. 48-4, Butler Decl. at ¶ 11). The average estimated payment is $706.22 and the highest estimated payment is $2,763.98. (Id. at ¶ 13). One class member opted out. (Id. at ¶ 14).

**LEGAL STANDARD**

Federal Rule of Civil Procedure 23 provides that "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule[1] 23(e)] is the protection of th[e] class members, including the named

---

[1] All "Rule" references are to the Federal Rules of Civil Procedure.

4

1 | plaintiffs, whose rights may not have been given due regard by the negotiating parties." <u>Officers
2 | for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.</u>, 688 F.2d 615, 624 (9th Cir. 1982), <u>cert.
3 | denied</u>, 459 U.S. 1217 (1983). Whether to approve a class action settlement is "committed to the
4 | sound discretion of the trial judge[,]" <u>Class Plaintiffs v. City of Seattle</u>, 955 F.2d 1268, 1276 (9th
5 | Cir.), <u>cert. denied</u>, 506 U.S. 953 (1992), who must examine the settlement for "overall fairness."
6 | <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1026 (9th Cir. 1998). The court may not "delete, modify
7 | or substitute certain provisions. The settlement must stand or fall in its entirety." <u>Id.</u> (internal
8 | quotation marks and citation omitted).

9 |     In order to approve a settlement in a class action, the court must conduct a three-step
10 | inquiry. First, it must assess whether the notice requirements under the Class Action Fairness
11 | Act ("CAFA") have been satisfied. <u>See</u> 28 U.S.C. § 1715(d). Second, it must determine whether
12 | the notice requirements of Rule 23(c)(2)(B) have been satisfied. Finally, it must conduct a hearing
13 | to determine whether the settlement agreement is "fair, reasonable, and adequate." <u>See</u> Fed. R.
14 | Civ. P. 23(e)(2); <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule
15 | 23(e)(2) standard); <u>Adoma v. Univ. of Phoenix, Inc.</u>, 913 F.Supp.2d. 964, 972 (E.D. Cal. 2012)
16 | (conducting three-step inquiry).

17 |     In determining whether a settlement agreement is fair, adequate, and reasonable, the court
18 | must weigh some or all of the following factors: "(1) the strength of the plaintiff's case; (2) the risk,
19 | expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action
20 | status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery
21 | completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the
22 | presence of a governmental participant; and (8) the reaction of the class members of the
23 | proposed settlement." <u>In re Bluetooth Headset Prod. Liab. Litig.</u>, 654 F.3d 935, 946 (9th Cir.
24 | 2011) (quoting <u>Churchill Vill., L.L.C. v. Gen. Elec.</u>, 361 F.3d 566, 575 (9th Cir. 2004)).

25 |     However, when "a settlement agreement is negotiated <u>prior</u> to formal class certification,
26 | consideration of these eight . . . factors alone is not enough to survive appellate review."
27 | <u>Bluetooth</u>, 654 F.3d at 946 (emphasis in original). This is because, "[p]rior to formal class
28 | certification, there is an even greater potential for a breach of fiduciary duty owed the class during

settlement." Id. District courts, therefore, also must determine "that the settlement is not the product of collusion among the negotiating parties." Id. at 947 (internal quotation and alteration marks omitted). In making that determination, courts should look for signs of collusion, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a `clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds[;]" and "(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund[.]" Id. (internal quotation marks and citations omitted).

## DISCUSSION

I. FINAL APPROVAL OF CLASS SETTLEMENT.

    A. Class Action Fairness Act.

CAFA requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official[.]" 28 U.S.C. § 1715(b). The statute provides detailed requirements for the contents of such a notice, which must include, among other things, "any proposed or final notification to class members[,]" and "any proposed or final class action settlement[.]" 28 U.S.C. §§ 1715(b)(3) & (4). The court may not grant final approval of a class action settlement until the CAFA notice requirement is met. See id. at § 1715(d) ("An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)]").

Here, defendant provided CAFA notice on March 1, 2018. (See Dkt. 45, Notice of Proposed Settlement). Counsel for defendant confirmed at the final fairness hearing that there have been no objections to the settlement from the state and federal officials that received the CAFA notices.

B. <u>Class Certification</u>.

In its order granting preliminary approval, the court certified the class pursuant to Rule 23(b)(3). (<u>See</u> Dkt. 44, PAO at 8-15 & 21-22). Because circumstances have not changed, the court hereby affirms its order certifying the class for settlement purposes under Rule 23(e). <u>See In re Apollo Grp. Inc. Sec. Litig.</u>, 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class.").

C. <u>Rule 23(c) Notice Requirements</u>.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information. <u>See</u> Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

After undertaking the required examination, the court approved the form of the proposed class notice. (<u>See</u> Dkt. 44, PAO at 19-22). As discussed above, the notice program has been implemented by Simpluris. <u>See</u> <u>supra</u> <u>Background</u> at § III.; (Dkt. 48-3, Butler Decl. at ¶¶ 3-15). Accordingly, based on its prior findings and the record before it, the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement. (<u>See</u> Dkt. 44, PAO at 19-22).

D. <u>Whether the Class Settlement is Fair, Adequate and Reasonable</u>.

    1. **The Strength of Plaintiffs' Case, and the Risk, Expense, Complexity, and Duration of Further Litigation**.

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." <u>Adoma</u>, 913 F.Supp.2d at 975. "In assessing the risk,

7

expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." Id. at 976.

Here, although plaintiffs believe strongly in the merits of their case, they recognize "[t]he outcome of this case would have been uncertain and fraught with risks." (See Dkt. 48-2, Declaration of Norman Blumenthal in Support of Motion for Final Approval of Class Settlement ("Blumenthal Decl.") at ¶¶ 8(a)-(f); see also Dkt. 44, PAO at 16-17 (noting litigation risks)). Class counsel concluded that further prosecution of this action could be protracted, unduly burdensome, and expensive, and involve appeals that could take at least another two to three years. (Dkt. 48-2, Blumenthal Decl. at ¶ 8(c)). The settlement affords class members monetary benefits in the face of a vigorous defense. (See Dkt. 48-1, Memo. at 17-19). Under the circumstances, the court finds it significant that the class members will receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecommc'ns. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004). In short, the court finds that this factor supports a finding that the settlement is fair, adequate, and reasonable.

2. **The Risk of Maintaining Class Action Status Through Trial**.

Because the parties settled the case prior to the filing of a motion for class certification, plaintiffs faced a risk that the class would not be certified. Accordingly, this factor weighs in favor of approving the settlement. See Chambers v. Whirlpool Corp., 2016 WL 5922456, *6 (C.D. Cal. 2016) ("Because plaintiffs had not yet filed a motion for class certification, there was a risk that the class would not be certified.").

3. **The Amount Offered in Settlement**.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). In granting preliminary approval of the settlement, the court concluded that the settlement benefits were fair, adequate, and reasonable in light of the litigation risks in the case. (See Dkt. 44, PAO at 15-18). Accordingly, this factor also weighs in favor of final approval.

### 4. **The Extent of Discovery Completed and the Stage of Proceedings**.

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." Nat'l Rural Telecommc'ns. Coop., 221 F.R.D. at 528. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." Id. at 527. The court previously examined these factors at length, (see Dkt. 44, PAO at 15-18), concluding that the parties "thoroughly investigated and considered their own and the opposing parties' positions[,]" (id. at 16), and developed "a sound basis for measuring the terms of the settlement against the risks of continued litigation[.]" (Id.). The parties conducted extensive discovery, including some expert discovery. (See id. at 15) (noting that plaintiffs retained an expert to analyze defendant's records). In other words, the parties entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions. See Nat'l Rural Telecommc'ns, 221 F.R.D. at 527-28 (noting that parties' examination of the factual and legal bases of the disputed claims through completion of discovery "strongly militates in favor of the Court's approval of the settlement"); Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("What is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.") (internal quotation marks omitted). This factor also supports approval of the settlement.

### 5. **The Experience and Views of Counsel**.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." Nat'l Rural Telecommc'ns, 221 F.R.D. at 528 (internal quotation marks and citation omitted). The court has previously noted that class counsel are adequate. (See Dkt. 44, PAO at 10-12). Moreover, class counsel have concluded that the settlement is "fair, reasonable and adequate, and is in the best interest of the Class in light of all known facts and circumstances, including the risk of significant delay, the likelihood that

Defendant would prevail on its defenses, and numerous potential appellate issues." (Dkt. 48-2, Blumenthal Decl. at ¶ 6(d)). Thus, this factor also supports approval of the settlement.

      6.    **The Presence of a Governmental Participant**.

There is no government participant in this matter. Accordingly, this factor is inapplicable. See Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *10, supplemented by 2011 WL 1838562 (N.D. Cal. 2011) (noting that lack of government entity involved in case rendered this factor inapplicable to the analysis).

      7.    **The Reaction of Class Members to the Proposed Settlement**.

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecommc'ns, 221 F.R.D. at 529. Here, the reaction of the class has been positive. Significantly, no objections and only one request for exclusion was received by the deadline for doing so. (See Dkt. 48-1, Memo. at 17; Dkt. 48-3, Butler Decl. at ¶¶ 14-15; see, generally, Dkt.). The lack of objections and the sole request for exclusion support approval of the settlement. See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval when only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v. Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two percent of the class members opted out and no objections were received); Barcia v. Contain-A-Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval of settlement when out of the 2,385 class members, there were no objections and only 56 class members opted out).

II.    ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARDS.

The Settlement Agreement provides that defendant will not oppose class counsel's request for an award of attorney's fees of no more than 25% of the Gross Settlement Amount. (See Dkt. 37-2, Settlement Agreement at § III.B.2). Class counsel now seek such an award. (See Dkt. 47, Fees Motion at 1; Dkt. 47-1, Fees Memo. at 1).

A. <u>Attorney's Fee Award</u>.

Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In diversity actions such as this one, the Ninth Circuit applies state law to determine the right to fees and the method for calculating fees. See <u>Mangold v. Cal. Public Util. Commc'n</u>, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state law in determining not only the right to fees, but also in the method of calculating the fees."); <u>Rodriguez v. Disner</u>, 688 F.3d 645, 653 n. 6 (9th Cir. 2012) ("If . . . we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees.").

The California Supreme Court has held that courts have discretion to choose among two different methods for calculating a reasonable attorney's fees award. See <u>Laffitte v. Robert Half Int'l Inc.</u>, 1 Cal.5th 480, 504 (2016) ("The choice of a fee calculation method is generally one within the discretion of the trial court, the goal under either the percentage or lodestar approach being the award of a reasonable fee to compensate counsel for their efforts."); <u>see</u> <u>also</u> <u>Bluetooth</u>, 654 F.3d at 942 ("courts have discretion to employ either the lodestar method or the percentage-of-recovery method"). "The lodestar method, or more accurately the lodestar-multiplier method, calculates the fee by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." <u>Laffitte</u>, 1 Cal.5th at 489 (internal quotation marks omitted). "The percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery." <u>Id.</u> "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." <u>Bluetooth</u>, 654 F.3d at 942; <u>see</u> <u>Laffitte</u>, 1 Cal.5th at 489; <u>Glass v. UBS Fin. Servs., Inc.</u>, 2007 WL 221862, *14 (N.D. Cal. 2007), <u>aff'd</u>, 331 F.App'x 452 (9th Cir. 2009) ("As always, when determining attorneys' fees, the district court [is] guided by the fundamental

principle that fee awards out of common funds be reasonable under the circumstances.").

"Because the benefit to the class is easily quantified in common-fund settlements," the court will exercise its discretion "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Bluetooth, 654 F.3d at 942. "Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent." Smith v. CRST Van Expedited, Inc., 2013 WL 163293, *5 (S.D. Cal. 2013); see Chavez v. Netflix, Inc., 162 Cal.App.4th 43, 66 n. 11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."); In re Consumer Privacy Cases, 175 Cal.App.4th 545, 557 n. 13 (2009) ("A fee award of 25 percent is the benchmark award that should be given in common fund cases.") (internal quotation and alteration marks omitted).

The 25 percent benchmark is the starting place and the court must determine the appropriate percentage by "tak[ing] into account all of the circumstances of the case." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002). In general, the court evaluates the following factors in determining the benchmark percentage to be applied: (1) the results achieved for the class; (2) the complexity of the case; (3) the skill, experience and performance of counsel; (4) the risk of nonpayment; and (5) the reaction of the class. See id. at 1048-49; Bluetooth, 654 F.3d at 941-42 & n. 7; Laffitte, 1 Cal.5th at 504 (determining reasonableness of percentage fee "by obtaining additional information from class counsel on the risks and potential value of the litigation;" the "contingency, novelty and difficulty" of the case; and "the skill shown by counsel").

### 1. The Results Obtained for the Class.

"The result achieved is a significant factor to be considered in making a fee award." In re Heritage Bond Litig., 2005 WL 1594403, *19 (C.D. Cal. 2005); see Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941 (1983) ("the most critical factor is the degree of success obtained"). As noted above, the average estimated payment for each class member is $706.22 and the highest estimated payment is $2,763.98. See supra Background at § III.; (Dkt. 47-3, Butler Decl. at ¶ 13). Moreover, the court previously found that the settlement was fair given the

substantial litigation risks in this case. (See Dkt. 44, PAO at 15-18). Accordingly, this factor weighs in favor of class counsel's fee request.

### 2. The Complexity of the Case.

"Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award." In re Heritage Bond Litig., 2005 WL 1594403 at *20. Since counsel is seeking only 25 percent of the common fund, this factor does not undermine the fee request.

### 3. The Skill Required and Quality of Work.

Class counsel are experienced class action counsel who have been appointed class counsel in other wage and hour cases. (See Dkt. 47-2, Declaration of Norman B. Blumenthal in Support of Motion for Award of Attorneys' Fees and Costs [and] Service Awards ("Blumenthal Fees Decl.") at ¶ 2 & Exh. 1). Though "it is not unusual for counsel to be skillful advocates in complex class action lawsuits[,]" see Good Morning to You Productions Corp. v. Warner/Chappell Music, Inc., 2016 WL 6156076, *4 (C.D. Cal. 2016), this factor weighs in favor of granting the requested fee.

### 4. The Risk of Nonpayment.

"The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." Knight v. Red Door Salons, Inc., 2009 WL 248367, *6 (N.D. Cal. 2009). Here, class counsel took this case "on a contingent basis with all of the concomitant risk factors inherent in such an uncertain undertaking." (Dkt. 47-1, Fees Memo. at 12; Dkt. 47-2, Blumenthal Fees Decl. at ¶ 6(d)). Class counsel devoted time, money, and resources to this matter despite the risk of non-payment. (See Dkt. 47-1, Fees Memo. at 12; Dkt. 47-2, Blumenthal Fees Decl. at ¶¶ 6(d)-(e)). In short, this factor also supports the requested fees.

### 5. Reaction of the Class.

As previously noted, the reaction of the class to the settlement has been positive. There were no objections to the settlement and only one request for exclusion. (See Dkt. 48-3, Butler

Decl. at ¶¶ 14-15).

### 6. Awards Made in Similar Cases.

The attorney's fees requested are within the Ninth Circuit's benchmark, see Hanlon, 150 F.3d at 1029, and well within the range commonly awarded in wage and hour class actions. See, e.g., Knight v. Red Door Salons, Inc., 2009 WL 248367, *6-8 (N.D. Cal. 2009) (awarding attorney's fees that represented 30% of the total settlement fund).

Consideration of the foregoing factors supports class counsel's request for attorney's fees in the amount of 25% of the Gross Settlement Amount. The court, therefore, is satisfied that a lodestar "cross-check" is not required. See Craft v. City of San Bernardino, 624 F.Supp.2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point."); In re Consumer Privacy Cases, 175 Cal.App.4th 545, 557 (2009) ("While the court has discretion to [conduct a Lodestar cross-check] where appropriate, it is not required."). In sum, a fee award of 25% out of the common fund ($175,000) established by the Settlement Agreement is fair and reasonable.

### B. Costs.

Class counsel seek $15,000.00 in costs. (See Dkt. 47-1, Fees Memo. at 18; Dkt. 47-2, Blumenthal Fees Decl. at ¶ 9). The court finds that the costs incurred by class counsel over the course of this litigation are reasonable, and therefore awards a total of $15,000.00 in costs.

### C. Class Representatives Incentive Awards.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton, 327 F.3d at 977; see Wren, 2011 WL 1230826, at *31 ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards."). Here, plaintiffs request that the court grant an incentive award in the amount of $5,000.00 for each named plaintiff. (See Dkt. 47-1, Fees Memo. at 18-19).

In its order granting preliminary approval of the settlement, the court undertook a thorough examination of the fairness and adequacy of the service award at issue, applying the careful scrutiny required in this Circuit. (See Dkt. 44, PAO at 18-21); see also Radcliffe v. Experian Info.

Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"). Based on its review of the record, the court determined that an award of no more than $5,000 for each class representative was presumptively reasonable and did not create a conflict of interest between class representatives and absent class members. (See Dkt. 44, PAO at 19). The court therefore concludes that the requested service payment is fair and reasonable, and is hereby approved.

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Plaintiffs' Motion for Final Approval of Class Settlement **(Document No. 48)** is **granted** as set forth herein.

2. The court hereby grants final approval to the parties' Settlement Agreement and Release ("Settlement Agreement") (Document No. 37-2, Exhibit 1; see also Document No. 48-2, Exhibit 2). The court finds that the Settlement Agreement is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

3. Plaintiffs' Motion for Award of Attorneys Fees and Costs and Service Awards **(Document No. 47)** is **granted** as set forth herein.

4. The settlement class is certified under Federal Rule of Civil Procedure 23(c): All individuals who were employed in California by DTG Operations, Inc. as non-exempt CSRs and/or RSAs (including Lead CSRs and RSAs) at any time between February 17, 2012 and March 1, 2017, who did not properly and timely request exclusion pursuant to the procedures specified in the Settlement Agreement.

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rules of Civil Procedure 23(c)(2).

6. Plaintiffs Michelle Bendon, Roger Bertrand, Cynthia Elder, Bryce Evans, David Paquette and Edwin Herrera shall be paid an incentive payment of $5,000 each in accordance with the

terms of the Settlement Agreement.

7. Class counsel shall be paid $175,000 in attorney's fees, and $15,000 in costs in accordance with the terms of the Settlement Agreement.

8. The Claims Administrator, Simpluris, shall be paid $14,999 for its fees and expenses, in accordance with the terms of the Settlement Agreement.

9. All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

10. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

11. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

12. Judgment shall be entered accordingly.

Dated this 22nd day of August, 2018.

/s/
Fernando M. Olguin
United States District Judge